IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

INTERNATIONAL UNION OF PAINTERS AND          :          CIVIL ACTION
ALLIED TRADES DISTRICT COUNCIL NO. 21         :
HEALTH AND WELFARE FUND                        :          NO.
2980 Southampton-Byberry Road                  :
Philadelphia, PA 19154                         :
                                               :
          and                                  :
                                               :
INTERNATIONAL UNION OF PAINTERS AND          :
ALLIED TRADES DISTRICT COUNCIL NO. 21         :
ANNUITY FUND                                   :
2980 Southampton-Byberry Road                  :
Philadelphia, PA 19154                         :
                                               :
          and                                  :
                                               :
INTERNATIONAL UNION OF PAINTERS AND          :
ALLIED TRADES DISTRICT COUNCIL NO. 21         :
VACATION FUND                                  :
2980 Southampton-Byberry Road                  :
Philadelphia, PA 19154                         :
                                               :
          and                                  :
                                               :
FINISHING TRADES INSTITUTE                     :
OF THE MID-ATLANTIC REGION                     :
2980 Southampton-Byberry Road                  :
Philadelphia, PA 19154                         :
                                               :
          and                                  :
                                               :
INTERNATIONAL UNION OF PAINTERS AND          :
ALLIED TRADES DISTRICT COUNCIL NO. 21         :
SCHOLARSHIP FUND                               :
2980 Southampton-Byberry Road                  :
Philadelphia, PA 19154                         :
                                               :
          and                                  :
                                               :
INTERNATIONAL UNION OF PAINTERS AND          :
ALLIED TRADES DISTRICT COUNCIL NO. 21         :
JOB ORGANIZATION PROGRAM TRUST FUND           :

2980 Southampton-Byberry Road                       :
Philadelphia, PA 19154                              :
                                                    :
            and                                     :
                                                    :
INTERNATIONAL UNION OF PAINTERS AND                 :
ALLIED TRADES FINISHING TRADES                      :
INSTITUTE                                           :
7230 Parkway Drive                                  :
Hanover, MD 21076                                   :
                                                    :
            and                                     :
                                                    :
INTERNATIONAL UNION OF PAINTERS AND                 :
ALLIED TRADES LABOR MANAGEMENT                      :
COOPERATIVE FUND                                    :
7234 Parkway Drive                                  :
Hanover, MD 21076                                   :
                                                    :
            and                                     :
                                                    :
JOSEPH ASHDALE, TRUSTEE                             :
2980 Southampton-Byberry Road                       :
Philadelphia, PA 19154                              :
                                                    :
            and                                     :
                                                    :
INTERNATIONAL UNION OF PAINTERS AND                 :
ALLIED TRADES DISTRICT COUNCIL NO. 21               :
2980 Southampton-Byberry Road                       :
Philadelphia, PA 19154                              :
                                                    :
                    *Plaintiffs,*                   :
                                                    :
            v.                                      :
                                                    :
MARRERO GLASS AND METAL, INC.                       :
300 Enterprise Lane                                 :
 Colmar, PA 18195                                   :
                                                    :
                    *Defendants.*                   :


## C O M P L A I N T

## Introduction

1.      Plaintiffs, International Union of Painters and Allied Trades District Council No. 21 Health and Welfare Fund,[1] IUPAT DC 21 Annuity Fund, IUPAT DC 21 Vacation Fund, Finishing Trades Institute of the Mid-Atlantic Region, Painters DC 21 Scholarship Fund, Painters DC 21 Job Organization Program Trust Fund (hereafter, "DC21 Funds"), IUPAT Labor Management Cooperative Fund, IUPAT Finishing Trades Institute (hereafter, "LMCF" and "FTI", respectively, and together with the aforementioned DC21 Funds collectively, "Plaintiff Funds"), Plaintiff Funds' Trustee Joseph Ashdale, and the IUPAT DC 21 (hereafter "Plaintiff Union") hereby bring this action upon default of a settlement agreement and to collect unpaid fringe benefit contributions.

## The Parties

2.      The DC21 Funds are employee benefit plans pursuant to Section 3(3) of the Employee Retirement Income Security Act (hereafter "ERISA"), 29 U.S.C. Section 1002(3), with their principal office located at 2980 Southampton-Byberry Road, Philadelphia, PA 19154, within this judicial district.

3.      Plaintiff Joseph Ashdale, a trustee of the DC 21 Funds, acts as a fiduciary on behalf of Plaintiff Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A), for the purposes of collecting delinquency contributions and compelling of an audit, and brings this

---

[1]      For the sake of space and ease of reading, "International Union of Painters and Allied Trades" which identifies the international entity to which the Plaintiffs are affiliated, shall hereafter be abbreviated as "IUPAT" and "District Council No. 21", which specifies the local body of the union, shall be abbreviated as "DC 21". Although the names "IUPAT" and/or "DC 21" may appear in the names of each Plaintiff entity, each is its own legally distinct party, as they are trust funds and an unincorporated labor organization.

action in such capacity on behalf of all Plaintiff Funds having been so authorized by the Trustees of each of the Plaintiff Funds.

4.      LMCF is an entity that performs certain employer association functions, but also is an unincorporated organization established under 29 U.S.C. §186(c)(9).  Its principal office is located at 7234 Parkway Drive, Hanover, MD 21076.

5.      FTI is a trust fund established under 29 U.S.C. Section §186(5), and a "multiemployer plan," "employee benefit plan," and "employee welfare benefit plan" pursuant to Sections 3(37), (1) and (3) of ERISA, 29 U.S.C. Sections §§1002(37), (1) and (3), with its principal office located at 7230 Parkway Drive, Hanover, MD 21076.

6.      Plaintiff Union is an unincorporated labor organization within the meaning of Section 3(5) of the Labor Management Relations Act of 1947 (hereafter the "LMRA"), as amended, 29 U.S.C. §185, with its principal office located at 2980 Southampton-Byberry Road, Philadelphia, PA 19154.  Plaintiff Union brings this action in its capacity as collective bargaining agent for the covered employees of the Defendant.

7.      Defendant Marrero Glass and Metal, Inc. (hereafter "Defendant Marrero") is a Pennsylvania corporation with its principal office located at 300 Enterprise Lane, Colmar, PA 18195.

8.      Defendant is an "employer" within the meaning of Section 2(2) of the National Labor Relations Act and Section 301 of the LMRA, as amended, 29 U.S.C. §§152(2) and 185, and Section 515 of ERISA, 29 U.S.C. §§1002(5) and 1145.

**Jurisdiction and Venue**

9.      Jurisdiction of the District Court is invoked pursuant to Section 301 of the LMRA,

- 4 -

as amended, 29 U.S.C. §185, in that Defendants are/were employers within the meaning of the LMRA, and party(ies) to a collective bargaining agreement(s) which forms the basis and substance of the matters at issue in this litigation; and 28 U.S.C. §1337, providing for original jurisdiction in civil actions that arise out of an Act of Congress regulating commerce.

10.    Jurisdiction of the District Court is invoked pursuant to the provisions of Section 502 and Section 515 of ERISA, 29 U.S.C. §§1132 and 1145, in that Defendants are employers as defined by ERISA. The Eastern District of Pennsylvania is the proper venue under ERISA section 502(e)(2), 29 U.S.C. §1132(e)(2), because Plaintiff Funds, with the exception of the LMCI and FTI, are administered in, and Defendants are located in, this judicial district.

### Facts Common To All Causes of Action

11.    On or about January 14, 2016, Defendant Marrero commenced a collective bargaining relationship with Plaintiff Union. A copy of the Collective Bargaining Agreement, in relevant part, is attached hereto as Exhibit "A."

12.    Defendant Marrero is required by the Collective Bargaining Agreement to make certain contributions on a timely basis to Plaintiff Funds, remit certain payments to Plaintiff Union (*e.g.*, dues deducted from employee paychecks), and make available to independent auditors any and all books and records requested for the purpose of verifying the accuracy of the contributions made to the Plaintiff Funds. *See* Ex. A.

13.    On January 30, 2018, Defendant entered into a Settlement Agreement with the Plaintiffs to resolve two pieces of litigation in the Eastern District of Pennsylvania, 17-cv-00255 and

17-cv-00257. A copy of the Settlement Agreement is attached hereto as Exhibit B.

14.     Under the terms of the settlement agreement, neither party admitted fault for the underlying allegations but agreed that both actions "shall be dismissed as Settled, Discontinued and Ended with Prejudice as against all Parties." *See* Ex. B, at ¶¶ 2, 8.

15.     In relevant part, the Defendant agreed to pay Plaintiffs a principal sum of $77,000.00 in timely installment payments on the 30th day of each month, and to remain current upon all remittance reports and contribution payments during the term of the Agreement. *See* Ex. B, at ¶¶ 3, 4, 5, 9(c).

16.     From the inception of the Settlement Agreement through April 30, 2018, Defendant remained current and timely upon its installment payments, current contribution obligations, and filing of remittance reports.

17.     Defendant made a late settlement payment for the amount due on May 30, 2018, by submitting payment of the appropriate installment amount on May 31, 2018.

18.     To date, Defendant has made total payments of $16,890.50 toward satisfaction of the $77,000.00 settlement amount.

19.     Defendant submitted timely remittance reports detailing the hours worked by its employees for the month of April 2018, but failed to make payment upon those hours when due, on May 31, 2018.

20.     According to Defendant's self-completed remittance report for April 2018, there is a principal delinquency in the amount of **$122,408.16**.

21.     According to Defendant's self-completed remittance report for May 2018, a payment of $117,295.06 is due to the Plaintiffs on or before June 30, 2018.

22.     In addition to employer contributions to the Plaintiff Funds, the Defendant was also bound to a dues checkoff provision in the collective bargaining agreement, requiring the deduction of administrative dues from the paycheck of each authorizing employee to be remitted along with contributions to the Benefit Funds for transmission to the Plaintiff Union.  Ex. A, at § 3.1.

23.     For April 2018, the Defendant has kept and failed to remit $3649.76 in dues money that it deducted from the paychecks of its employees.

24.     Similarly, the CBA calls for a voluntary deduction from employee paychecks for a Political Action Fund.  Ex. A., at § 3.6.

25.     For April 2018, the Defendant has kept and failed to remit $1158.15 in Political Action Fund money that it deducted from the paychecks of its employees.

26.     The sums withheld from employee paychecks for dues and Political Action are included in the principal delinquency figure of $122,408.16, along with delinquent employer contributions.

27.     The Settlement Agreement also included provisions for confidentiality and non-disclosure.  See Ex. B, at ¶¶ 15-16.

28.     On Tuesday, May 29, 2018, counsel for Marrero Glass and Metal circulated among counsel for unrelated parties a complaint, alleged to have been filed in the Philadelphia Court of Common Pleas, in which it was stated that "The Hall has been sued before for its animosity and discrimination against MGM, which is a family owned and minority operated company."

29.     Counsel for Marrero also shared the Settlement Agreement with counsel unrelated

to the settling parties and attached it to court filings in an action in Maryland.

30.     As required by Paragraph 10 of the Settlement Agreement, Plaintiff notified Defendant of its default by letter of June 5, 2018.  Attached hereto as Exhibit C.

31.     Defendant was in receipt of the Notice on or before June 7, 2018, but failed to cure the default.

## First Cause of Action
## Breach of Settlement Agreement

32.     Plaintiffs hereby incorporate the allegations of paragraphs 1 through 31, as if set forth fully herein.

33.     By failing to make timely payment upon settlement amounts, Defendant has violated the plain terms of the Settlement Agreement.

34.     By failing to remain current in its contribution obligations for hours worked pursuant to the Collective Bargaining Agreement, Defendant has violated the plain terms of the Settlement Agreement.

35.     By failing to abide by its promises not to publicize the settled disputes or disparage the Plaintiffs, Defendant has violated the plain terms of the Settlement Agreement.

36.     In the event of Default, the Settlement Agreement provides for the outstanding settlement amount to become due and owing, with 1% monthly interest applied to the unpaid amount.  Ex. B, at ¶ 9.

37.     The Settlement Agreement requires that Defendants are responsible for all

attorney's fees and collection costs incurred by the Plaintiffs in the event of enforcement resulting from a Default. *Id*.

38.    The Settlement Agreement provides that "an affidavit executed by counsel for the DC 21 Benefit Funds, or by any other authorized representative(s) of the DC 21 Benefit Funds, shall constitute conclusive proof of a claim for the amount of any sums due to the DC 21 Benefit Funds as delinquent contributions, interest, liquidated damages, late charges, administrative costs, attorney's fees and costs, or other amounts due and owing in the event that judicial enforcement of this Settlement Agreement and Judgment Note becomes necessary." Ex. B, at ¶ 11(b).

39.    Defendants have a remaining balance of payments under the Settlement Agreement in the amount of **$60,109.50**.


WHEREFORE, Plaintiffs request this Court to grant judgment against the Defendant and in favor of Plaintiffs and to award relief as follows:

    a.    Judgment in the amount representing the total outstanding amount of the settlement payment **$60,109.50**, or such other amount as may be due and owing when this cause of action reaches judgment;

    b.    Reasonable counsel fees, interest at the rate of (1%) per month, and costs of suit, including costs of any audit performed; and

    c.    Other relief as the Court deems just and proper.

**Second Cause of Action**
**Section 502 and Section 515 of ERISA, 29 U.S.C. §§ 1132 and 1145**

39.     Plaintiffs hereby incorporate the allegations of paragraph 1 through 38, as if set forth fully herein.

40.     Defendant Marrero is, and has been, performing covered work pursuant to a collective bargaining agreement with Plaintiff Union since at least January 2016.

41.     Defendant, like all other contributing employers to Plaintiff Funds, is required to submit monthly reports accurately setting forth the hours worked by employees covered under the collective bargaining agreement(s), and to remit contributions to Plaintiff Funds, at hourly rates commensurate with those required pursuant to the collective bargaining agreement(s).  Ex. A.

42.     The collective bargaining agreement further notes that liquidated damages and interest shall be assessed to untimely and/or unpaid fringe benefit contributions until the employer cures its delinquency. Ex. A.

43.     Notwithstanding the obligations of the collective bargaining agreement, Defendant Marrero reported that it has employed workers for whom it has failed to remit the required benefit contributions for the period of April 2018, thus resulting in a delinquency at present of $122,408.16.

44.     During the month of May 2018, Marrero reported the employment of workers for 3,037.50 hours, for which contribution to the Plaintiff Funds in the amount of $117,295.06 is due on or before June 30, 2018.

45.     Under the terms of the same collective bargaining agreement, Defendant Marrero

is also required to permit Plaintiff Funds to conduct audits at reasonable intervals to determine the accuracy of the contributions remitted by the company.

46.     Plaintiffs believe an audit of Defendant Marrero may show that Defendant is also delinquent in making contribution payments to Plaintiff Funds for additional work it performed but failed to report or report correctly – resulting in additional unpaid contributions which are immediately due and owing.

WHEREFORE, Plaintiffs request this Court to grant judgment against the Defendant and in favor of Plaintiffs and to award relief as follows:

a.     Judgment in the amount of **$122,408.16**, or such other amounts as may be due and owing when this cause of action reaches judgment, including but not limited to delinquencies uncovered by and through an audit, that are owed as of the date this claim is reduced to judgment, as provided for by the applicable collective bargaining agreement(s) and by Section 502 of ERISA;

b.     Injunctive relief ordering Defendant to fully submit to an audit of their payroll records by an auditor of the Plaintiffs' choosing at such reasonable times as the Plaintiffs may request;

c.     Reasonable counsel fees, interest to run at rate of 5%, and costs of suit;

d.      Other relief as the Court deems just and proper.

Respectfully submitted,

SPEAR WILDERMAN, P.C.

BY: _____
MARTIN W. MILZ
SYRETTA J. MARTIN
230 South Broad Street, Suite 1400
Philadelphia, PA 19102
(215) 732-0101
Attorneys for Plaintiffs

Dated: June 20, 2018

# Exhibit

# A

# COLLECTIVE BARGAINING AGREEMENTS

Between

**District Council No. 21
International Union of Painters
and Allied Trades AFL-CIO-CLC**

and the

**Associated Master Painters and Decorators Inc. of Philadelphia and Vicinity**

and the

**Interior Finish Contractors Association of Delaware Valley**

and the

**Architectural Glass and Metal Association of Philadelphia and Vicinity**

and the

**P.D.C.A. of Northeast Pa.**

and the

**P.D.C.A. of Harrisburg**

and the

**Keystone Contractors Association**

and

**All Independent Employers and Associations**

**Starting, May 1, 2017 (Painters)
Starting, May 1, 2015 (Drywall, Glaziers & Upstate)**

**See Duration clause, Article 27, for EXPIRATION DATES**

1

# ARTICLE 3

## Check-Off Administrative Dues

**3.1**    **Agreement of Check-Off**
Every EMPLOYER, signatory to this Agreement, hereby agrees to check-off from wages of any EMPLOYEE by such EMPLOYER during the term of this Agreement, administrative dues in the then amount specified in this Agreement and/or Union's by-law and to remit said amount to the Administrator in the following manner.

**3.1.1**    Upon signing of this Agreement the Union will notify the EMPLOYER in writing of the amount of administrative dues specified, and will submit to the EMPLOYER a copy of the By-Laws or the appropriate By-Laws.

**3.1.2**    For each payroll period, the EMPLOYER will deduct from the wages of each EMPLOYEE the amount specified, based on Gross Wages and Fringe Benefits paid during said payroll period, and will accumulate said deduction at the end of the month.

**3.1.3**    All payments and/or transmittals of funds required under this Article shall be paid to the Administrator not later than the thirtieth (30th) day following the end of the month in which the check-off occurred. All such payments shall be made in accordance with the payment and collection procedures hereinafter set forth in Article 13.

**3.2**    **Outside of #21's Area:**
The Employer party hereto shall, when engaged in work outside the geographic jurisdiction of the Union party to the agreement, comply with all of the lawful clauses of the Collective Bargaining Agreement in effect in said other geographic jurisdiction and executed by the employers of the industry and the affiliated Local Unions in the jurisdiction, including but not limited to, the wages, hours, working conditions, fringe benefits, and procedure for settlement of grievance set forth therein; provided however, that where no affiliated Union has a current effective agreement covering such out-of-area work, the employer shall perform such work in accordance with this agreement; and provided further that as to employees employed by such employer from within the geographic jurisdiction of the Union party to this agreement and who are brought into an

5

outside jurisdiction, such employee shall be entitled to receive the wages and condition effective in either the home or outside jurisdiction whichever are more favorable to such employees. In situations covered by the last proviso fringe benefit contributions on behalf of such employees shall be made solely to their home funds in accordance with their governing documents, and the difference between the wages and benefit contributions required by the away funds and the home funds, if any, shall be paid to the employees as additional wages. This provision is enforceable by the District Council or Local Union in whose jurisdiction the work is being performed, both through the procedure for settlement of grievance set forth in its applicable collective bargaining agreement and through the courts, and is also enforceable by the Union party to this agreement, both through the procedure for settlement of grievances set forth in this agreement and through the courts. **Drywall Finishers ONLY:** See Article 25.10.7

3.3    **EMPLOYER'S Obligation:**
The obligation of the EMPLOYER under 3.1 and 3.3 shall apply only as to EMPLOYEES who have voluntarily signed a valid dues deduction authorization card.

3.4    **Time of Employment**
At the time of employment of any EMPLOYEE, the EMPLOYER will submit to each such EMPLOYEE, for his voluntary signature, a dues deduction authorization card in duplicate; one copy of which is retained by the EMPLOYER and the other returned to the Union; the form to be supplied to such EMPLOYER by the Union.

3.5    **Submittal Form:**
On or before the thirtieth (30th) day of each month, the EMPLOYER will submit to the Union, a list of all EMPLOYEES covered by the Agreement who have not signed a dues deduction card, together with the number of hours worked by each such EMPLOYEE during the month previous.

3.6    **Political Action Fund:**
It is recognized that the District Council 21 has a Political Action Fund and is entitled to voluntary contributions by its members. Upon receipt of written authorization from an EMPLOYEE, the EMPLOYER agrees to deduct payments in the amount specified in the wages of said EMPLOYEE, and

6

forward such monies to the Political Action Fund, in a manner consistent with Article 3.

## ARTICLE 4

## Function of Management

4.1    **Management Rights:**
In the exercise of its functions of management, the EMPLOYER shall have the right, to plan, direct and control operations of all its work, hire EMPLOYEES, direct the working forces in the field, assign EMPLOYEES their jobs, discharge, suspend or discipline for proper cause, (proper cause for discharge includes but is not necessarily limited to incompetence, insubordination, habitual tardiness or absenteeism), transfer, promote or demote EMPLOYEES, lay off EMPLOYEES because of the lack of work, or for other legitimate reasons, require EMPLOYEES to observe the EMPLOYER'S and/or contracting entities, rules and regulations not inconsistent with this Agreement, institute a fair and consistent drug policy, regulate the amount of equipment used and the use of equipment and other property of the EMPLOYER, decide the number of EMPLOYEES needed; provided, however, that the EMPLOYER will not use its rights for the purpose of discrimination against any EMPLOYEE.

## ARTICLE 5

## Contract Increases & Territory covered in Zones

**Zone 1 (Phila. Metro) Painters, Drywall Finishers, Wallcoverers, Glaziers:**
Territory: Pennsylvania Counties of: Philadelphia, Montgomery, Bucks, Delaware, And Chester.

Negotiated Increases for contract Duration *Zone 1*: Painters & Wallcoverers (distribution to be determined by Union)

|  | 1st Year | 2nd Year | 3rd Year | 4th Year | 5th Year |
|---|---|---|---|---|---|
| Regular | $2.00 | $2.00 | $1.75 | $1.75 | $1.75 |
| Bridge | $2.25 | $2.25 | $1.65 |  |  |
| Industrial | 80%wages | 80% wages | $1.65 |  |  |

7

16 to 35 EMPLOYEES shall be $40,000.00 and over 35 EMPLOYEES $50,000.00. In lieu of a bond, a letter of credit in said amount is acceptable.

**12.3** For All EMPLOYERS, in lieu of a minimum bond or letter of credit, the EMPLOYER eligible for the minimum coverage must deposit the sum of $ 1,000.00 Per Man Per Week, by certified check to be held in escrow by the Fund Office, until such time the EMPLOYER shall produce a bond based on the above scale, or no longer employs District Council # 21 members.

**12.3.1** EMPLOYERS working under these circumstances may be required by the Union to pay fringe benefits and deductions on a weekly basis.

**12.4** Vacation Fund escrow will also be retained (per Article 13.4.1)

# ARTICLE 13

## Various Funds

**13.1** **Health & Welfare Funds:** (1) The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the I.U.P.A.T. District Council No. 21 Welfare Fund. The Trust Agreement provides, *inter alia,* for the receipt of contributions by the Welfare Fund for the purpose of providing group health, medical surgical disability and other related welfare benefits to eligible workers and their families, in such form and amounts as the Trustees of the Welfare Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to contribute for each EMPLOYEE covered by this Agreement to the Welfare Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

**13.2** **The I.U.P.A.T. Union and Industry Pension Fund and Annuity:**

**13.2.1** The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the I.U.P.A.T. Union and Industry National Pension Fund ("Pension Fund").

18

The Trust Agreement provides *inter alia,* for the receipt of contributions by the I.U.P.A.T. Union and Industry National Pension Fund for the purpose of providing pension and other related benefits to eligible workers and their families, in such form and amounts as the Trustees of the I.U.P.A.T. Union and Industry National Pension Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to contribute for each EMPLOYEE covered by this Agreement to the Pension Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

13.2.2    Contributions shall be paid on behalf of any EMPLOYEE starting with the EMPLOYEE'S first day of employment in a job classification covered by this Agreement.

13.2.3    The payments to the Pension and Annuity Fund required above shall be made to the I.U.P.A.T. Union and Industry National Pension Fund which was established under an Agreement and Declaration of Trust dated April 1, 1967.

13.2.4    The EMPLOYER hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve as EMPLOYER Trustees, together with their successors. The EMPLOYER further agrees to be bound by all actions taken by the Trustees pursuant to the Agreement and Declaration of Trust.

13.2.5    All contributions shall be made at such time and in such manner as set forth in this Agreement. The Trustees shall have the authority to have an independent certified public accountant audit the payroll and wage records of the EMPLOYER for the purpose of determining the accuracy of contributions to the Pension Fund.

13.2.6    If an EMPLOYER fails to make contributions to the Pension Fund within thirty (30) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the EMPLOYER shall be liable for all costs for collecting payments due, together with attorneys' fees and such liquidated damages as may be assessed by the Trustees. The EMPLOYER'S liability for payment under this Article shall not be subject to or covered

19

by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

**13.2.7**   The Pension Plan adopted by the Trustees of the Pension Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the EMPLOYER at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

**13.2.8**   Funds are paid to the Painters District Council 21 of Northeastern Pennsylvania Health & Welfare Fund for the members covered by Article 24 (L.U. 41, L.U. 218, L.U. 1269)

**13.3**      **The I.U.P.A.T. District Council 21 Annuity Fund:**

**13.3.1**   The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the I.U.P.A.T. District Council 21 Annuity Fund. The Trust Agreement provides *inter alia,* for the receipt of contributions by the I.U.P.A.T. District Council 21 Annuity Fund for the purpose of providing pension and other related benefits to eligible workers and their families, in such form and amounts as the Trustees of the I.U.P.A.T. District Council 21 Annuity Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to contribute for each EMPLOYEE covered by this Agreement to the Annuity Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

**13.3.2**   Contributions shall be paid on behalf of any EMPLOYEE, starting with the EMPLOYEE'S first day of employment in a job classification covered by this Agreement.

**13.3.3**   The payments to the Annuity Funds required above shall be made to the I.U.P.A.T. District Council 21 Annuity Fund which was established under an Agreement and Declaration of Trust dated June 1, 1972.

**13.3.4**   The EMPLOYER hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve as EMPLOYER

Trustees, together with their successors. The EMPLOYER further agrees to be bound by all actions taken by the Trustees pursuant to the Agreement and Declaration of Trust.

**13.3.5**   All contributions shall be made at such time and in such manner as set forth in this Agreement. The Trustees shall have the authority to have an independent certified public accountant audit the payroll and wage records of the EMPLOYER for the purpose of determining the accuracy of contributions to the Annuity Fund.

**13.3.6**   If an EMPLOYER fails to make contributions to the Annuity Fund within thirty (30) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the EMPLOYER shall be liable for all costs for collecting payments due, together with attorneys' fees and such liquidated damages as may be assessed by the Trustees. The EMPLOYER'S liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided or set forth elsewhere in this Agreement.

**13.3.7**   The Annuity Plan adopted by the Trustees of the Annuity Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the EMPLOYER at all times to treat contributions to the Annuity Fund as a deduction for income tax purposes.

**13.3.8**   Funds are paid to the Painters District Council 21 of Northeastern Pennsylvania Annuity Fund for the members covered by Article 24 (L.U. 2018, L.U. 1269).

**13.4**   **Vacation Fund:** (1) The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration or Trust, and all amendments thereto, governing establishment and operation of the I.U.P.A.T. District Council No. 21 Vacation Fund. The Agreement provides, *inter alia,* for the receipt of contributions by the Vacation Fund for the purpose of providing vacation benefits to eligible workers and their families, in such form and amounts as the Trustees of the Vacation Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The

21

EMPLOYER agrees to contribute for each EMPLOYEE covered by this Agreement to the Vacation Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

**13.4.1**   A certified check for no less than Five Hundred Dollars ($500.00) and no more than Two Thousand Five Hundred Dollars ($2,500.00) shall be deposited with the Administrator of the Vacation Fund by each EMPLOYER. The Board of Trustees of the Vacation Fund shall determine the amount due from each EMPLOYER, predicated on the basis of one-twelfth (1/12) of the yearly amount of funds submitted by the EMPLOYER to the Vacation Fund in the preceding year. In addition to any other remedies available to the Vacation Fund as set forth is this Article, an EMPLOYER who is delinquent in submitting contributions to the Vacation Fund shall have the delinquent monies withdrawn from its certified check, and will be required to resubmit a new check in full covering this delinquency.

**13.5**   **Training and Education Fund:**
The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the I.U.P.A.T. District Council 21 Fund (hereinafter referred to as The FTI Fund). The Trust Agreement provides, *inter alia,* for the receipt of contributions by the FTI Fund for the purpose of establishing and administering a Training Program as the Trustees of the FTI Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to contribute for each EMPLOYEE covered by this Agreement to the FTI Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

**13.6**   **National Apprenticeship Fund:** The EMPLOYER agrees to contribute the sum of five cents ($.10) per hour for each hour for which an EMPLOYEE receives pay to the National Apprenticeship Fund. Trustees of said Fund shall remit said sum to the National Painting and Decorating and Drywall Apprenticeship and Manpower Training Fund at such regular periods of time, and in the manner and form as shall be determined by the Trustees of the National Apprenticeship Fund from time to time.

**13.7     The District Council 21 Scholarship Fund:**

**13.7.1**   The EMPLOYER agrees to be bound by all provisions set forth in the Agreement and Declaration of Trust, and all amendments thereto, governing establishment and operation of the District Council 21 Scholarship Fund ("Scholarship Fund"). The Trust Agreement provides *inter alia*, for the receipt of remittance by the Scholarship Fund for the purpose of providing educational relief to eligible workers and their families, in such form and amounts as the Trustees of the Scholarship Fund may determine in conformity with the discretion vested in them under provisions set forth in the Trust Agreement. The EMPLOYER agrees to remit for each EMPLOYEE covered by this Agreement to the Scholarship Fund in the manner provided herein, in the then current amounts and for the periods as set forth in Article 5.

**13.7.2**   Remittances shall be paid on behalf of any EMPLOYEE, starting with the EMPLOYEE'S first day of employment in a job classification covered by this Agreement.

**13.7.3**   The EMPLOYER further agrees to be bound by actions taken by the Scholarship Fund Trustees pursuant to the Agreement and Declaration of Trust.

**13.7.4**   All remittances shall be made at such time and in such manner as set forth in this Agreement. The Trustees shall have the authority to have an independent certified public accountant audit the payroll and wage records of the EMPLOYER for the purpose of determining the accuracy of deductions and remittances to the Scholarship Fund.

**13.7.5**   If an EMPLOYER fails to make remittance to the Scholarship Fund within thirty (30) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the EMPLOYER shall be liable for all costs for collecting payments due, together with attorneys' fees and such liquidated damages as may be assessed by the Trustees. The EMPLOYER'S liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike' clause which may be provided or set forth elsewhere in this Agreement.

23

**13.8**    **Board of Trustees:**

As to each Fund referenced in Sections 13.1 through 13.15 of this Article, the EMPLOYER hereby irrevocably designates as its representatives on the Boards of Trustees such Trustees as are now serving, or will in the future serve, as EMPLOYER Trustees, together with their successors appointed and/or elected in accordance with provisions set forth in the Agreement and Declaration of Trust for each Fund. The EMPLOYER further agrees to be bound by all actions taken by the Trustees of each respective Fund pursuant to each such Agreement and Declaration of Trust, and to be further bound by any and all rules and regulations duly adopted by each Board of Trustees. The Welfare Fund, Vacation Fund and FTI Fund shall each be administered, pursuant to an Agreement and Declaration of Trust, by a Board of Trustees composed of an equal number of representatives selected by the AMPD, IFCA, and AGMA, and or other Associations that the Council may acknowledge, by its Board of Directors, and by District Council No. 21 in accordance with its Bylaws. A copy of the Trust Agreements, together with Amendments thereto, shall be made available upon request by the parties and shall be considered a part of this Agreement as if set forth herein at length. The said Trust Agreements and any Amendments thereto, shall provide for annual audits of each respective Fund. The payments by the EMPLOYERS of contributions to each respective Fund shall be made monthly, on or before a date and in a manner and form that shall be prescribed by the Trustees. Each EMPLOYER shall be bound to provide such information to each Fund as its Board of Trustees may require in order to verify the amount(s) of contributions due and owing by such EMPLOYER.

**13.9**    **Auditing of Books:**

Each or any of the Funds referenced in this Article may engage a certified public accounting firm to periodically audit the books and records of any contributing EMPLOYER (or contractors working in this area) for the purpose, of verifying contributions due and owing to the respective Fund and/or liabilities for contributions due and owing to such Fund. The EMPLOYER shall make available to any Fund auditor all books and records requested by the auditor and/or Board of Trustees, including, but not limited to; payroll, wage, general ledger, cash disbursement records, compensation insurance audits, and any other pertinent records deemed necessary for the purpose, of ascertaining and/or verifying payments and/or determining liabilities. Such records

24

shall be made available to Fund auditors upon reasonable notice. In the event such audit shall disclose for any period a deficiency in the payment reported owed and/or paid to the Fund(s) of five percent (5%) or more of the amount that should have been paid for such period under this Agreement, the cost of the audit shall be borne by the EMPLOYER. A confirmation report from the Funds will be available annually upon request by any EMPLOYER pertaining to its payments into the Funds, Industry Advancement Program and Check-Off Administrative Dues.

13.10   The benefit programs adopted by each respective Board of Trustees shall be described in a Summary Plan Description (if one is required by law) and made available to all eligible participants of each Fund.

13.11   Each EMPLOYER agrees to furnish the Board of Trustees of each respective Fund with information necessary and appropriate to verify required contributions on reporting forms to be provided by each respective Fund. Such information shall be reported each month and shall include, but not be limited to, the names, classifications, Social Security numbers of the EMPLOYEES, and the number of hours worked by each EMPLOYEE during the period or periods for which the contributions are being made.

13.12   All EMPLOYERS from jurisdictions other than the jurisdiction of District Council No. 21 shall be subject to the above provisions contained in this Agreement and the gross payroll contributions when performing work within the geographical jurisdiction of District Council No. 21, including IAP contributions which shall be paid to the appropriate association representing that trade.

13.13   **Delinquencies/Collection Procedures/Rights and Remedies of the Union and Fringe Benefit Funds:** In addition to any rights, remedies or obligations set forth in this Agreement, each EMPLOYER shall have the obligations and the Union and each Fringe Benefit Fund shall have the rights and remedies set forth below:

13.13.1   All reports to the Union with respect to check-off and administrative dues, as well as amount due and owing must be filed with and paid to the Administrator of the Union and/or each respective Fund by the earlier of the thirtieth (30th) day or

last calendar day of each month following the month in which the contributions and/or check-off became due and owing.

Liquidated Damages of Seven Hundred Fifty Dollars ($750.00) for failure to file a timely remittance report and not make a timely payment shall automatically be levied upon the delinquent EMPLOYER; Liquidated Damages of Five Hundred Dollar ($500.00) shall be levied on the delinquent EMPLOYER in circumstances where a report is submitted in a timely manner, but the EMPLOYER has failed to pay the appropriate contribution to the Union and/or Fund and interest shall start to accrue on the delinquent amount from the due date at the rate then charged by the IRS for delinquent taxes under Section 662(a) of the I.R.C., plus one (1) percentage point in excess of such rate.  Upon written petition and showing of need by an EMPLOYER who has had a collective bargaining agreement with District Council # 21 for at least two (2) years, a twenty (20) day extension for payment will be granted by the Business Manager / Secretary Treasurer. All liquidated damages paid pursuant to this Section shall be distributed pro rata to the Union (dues); the Association (IAP contributions) and the respective Funds based upon the amount of the delinquent obligation owed to each entity. Nothing contained herein shall be construed as a limitation on the right of any Fringe Benefit Fund to impose liquidated damages and/or costs of collection proceedings on a "delinquent" EMPLOYER in accordance with provisions set forth in ERISA or applicable law.

**13.13.2**   In the event the wage payments, Fringe Benefit (Fund) contributions, Union Administrative Dues (Check-off) or any other payments required by any provision in this Collective Bargaining Agreement are not transmitted to the EMPLOYEES, the Union or the appropriate EMPLOYEE Benefit Fund, as the case may be, in a timely manner, in accordance with provisions set forth herein, or in the event the reporting forms relating to Union assessments and/or EMPLOYEE Benefit Fund contributions are not submitted in a timely manner as provided herein, the EMPLOYER shall be considered as "delinquent." In addition to the liquidated damages set forth in (13.13.1) above, the "delinquent" EMPLOYER shall be obligated to pay any assessments and/or interest on the debt that may be required under rules, regulations or procedures governing delinquent contributions established by the Trustees of the Various Fringe Benefit Funds identified in this labor contract and not

inconsistent with this Agreement or as may otherwise be imposed by law. Each EMPLOYER shall be bound and governed by any rules, regulations or procedures adopted by any of the Boards of Trustees or any of the Fringe Benefit Funds to which contributions are due and owing under this Agreement. The rules, regulations or procedures adopted by the Trustees of the Various Fringe Benefit Funds may require payment by a delinquent EMPLOYER of liquidated damages, assessments, interest on the debt (in an amount determined by the Trustees or by applicable law) and shall also assess against a delinquent EMPLOYER audit fees incurred during the collection, including, but not limited to counsel fees and costs. Such charges and expenses shall be paid to that entity to whom such contributions and payments are owed. The Co-Chairman of the Joint Trade Board may require any "delinquent" EMPLOYER or any EMPLOYER who has demonstrated a pattern of delinquency to submit its contributions on a weekly basis, notwithstanding any provisions set forth in this labor Agreement. In addition, the Board of Trustees of the Various Fringe Benefit Funds are empowered to adopt rules and regulations requiring any "delinquent" EMPLOYER or any EMPLOYER that has demonstrated a pattern of delinquency to furnish to the Board of Trustees a bond or other appropriate surety in an amount sufficient to protect the respective Fund(s) from any financial loss that may result from future delinquencies by any EMPLOYER that is, or has been, delinquent in its obligations to the Fund. The amount of any such bond or other surety shall be in the sole discretion of the Board of Trustees, and the Board in determining the amount of any such bond, may consider the costs related to the collection of future delinquencies, as well as contribution amounts.

13.13.3   In addition to all other remedies available to the parties and/or the various Fringe Benefit Funds with respect to "delinquent" EMPLOYERS, the Union may treat any failure by an EMPLOYER to satisfy a delinquency as a breach of this Agreement. In such event, the Union may, in addition to any other remedy that may be available to it, and without being limited by any "no strike" obligation that may appear in this Agreement or be implicit in its terms, remove its members from any job(s) of such delinquent EMPLOYER. A removal of manpower by the Union, pursuant to this provision, shall not be construed as a "termination" of this Agreement with respect to any affected EMPLOYER.

27

**13.14**   **The International Union of Painters and Allied Trades Labor-Management Cooperation Initiative**

**13.14.1**   Commencing with the 1st day of May 1997, and for the duration and any renewal of this Agreement, the EMPLOYER agrees to make payments to The International Union of Painters and Allied Trades Labor Management Cooperation Initiative ("Fund") for each EMPLOYEE covered by this Agreement, as follows:

**13.14.2**   For each hour or portion thereof, for which an EMPLOYEE receives pay, the EMPLOYER shall make the then current contribution of $.10 to the Fund.

**13.14.3**   For the purpose of this Article, each hour worked for, including hours attributable to show up time, and other hours for which pay is received by the EMPLOYEE in accordance with the Agreement, shall be counted as hours for which contributions are payable.

**13.14.4**   Contributions shall be paid on behalf of any EMPLOYEE starting with the EMPLOYEE'S first day of employment in a job classification covered by this Agreement.

**13.14.5**   The EMPLOYER and Union signatory to this Agreement agrees to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

**13.15**   The EMPLOYER hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as EMPLOYER Trustees, together with their successors.

**13.16**   All contributions shall be made at such time and in such manner, as the Trustees require and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

**13.17**   If an EMPLOYER fails to make contributions to the Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary not withstanding, and the EMPLOYER shall be liable for all costs of collection of the

28

payments due together with attorney fees and such liquidated damages as may be assessed by the Trustees. The EMPLOYER'S liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

## ARTICLE 14

## Pinpointing Funds

## Fund One

### Job Organization Program: Eligibility and Rules
### Painters, Wallcoverers

14.1 **Purpose:**
The EMPLOYER and District Council No. 21 agree to establish the District Council No. 21 "JOB ORGANIZATION PROGRAM" for the purpose of providing subsidies on specific jobs in order to enable contractors who are signatory to this Agreement to bid more competitively on certain projects in the marketplace. To implement the Jobs Organization Program ("JOP"), the EMLOYER and District Council No. 21 further agree as follows:

14.2 **Trust Fund:**
The EMPLOYER and District Council No. 21 shall establish a Trust Fund to be known as the "International Union of Painters and Allied Trades, District Council No. 21 Jobs Organization Program Trust Fund."

14.3 **Purpose of Trust Fund:**
The purpose of the Jobs Organization Program Trust Fund shall be to provide, in accordance with the Jobs Organization Program Trust Agreement, financial subsidies for eligible contractors. The Jobs Organization Program Trust Fund shall be the sole and exclusive source of funding for all subsidies, expenses and other charges and liabilities incurred by operation of the Jobs Organization Program and shall not be liable for such charges in excess of the assets in the Fund.

29

**14.4     Guidelines:**
The Jobs Organization Program Trust Agreement shall provide that the following guidelines and rules must be satisfied:

**14.4.1**   There must be Non-Union competition bidding on the project.

**14.4.2**   The project is within District Council 21's territorial jurisdiction and scope of work covered in this Collective Bargaining Agreement.

**14.4.3**   The EMPLOYER making application must be signatory to District Council 21's Collective Bargaining Agreement and utilize members of said bargaining unit. EMPLOYERS signed to project Agreements are not eligible to apply for JOP subsidies.

**14.4.4**   The EMPLOYER making application must not be delinquent in any fringe benefit reporting and contribution obligations at the time of application and at the start of the approved project or shall have reached an appropriate Agreement, satisfactory to the Trustees, in resolution of any outstanding delinquencies.

**14.4.5**   Only the District Council shall have the authority to approve a subsidy with respect to a project.

**14.4.6**   Subsidized hours granted under the Jobs Organization Program will only apply to members of District Council No. 21 and then only to the EMPLOYEES that are based in that zone. These subsidies will not apply and/or be used for change order work but only to the original contract.

**14.4.7**   Only the hours worked on an approved JOP project will be subsidized and then only up to the amount approved by the District Council.

**14.4.8**   The EMPLOYER will report the start of a JOP project. There will be a job steward placed and appointed by the District Council at the start of any JOP project. When the project requires more than five (5) workers, 50% of the additional workers starting with the sixth, will be assigned by the District Council from the "out of work register", qualifications prevailing.

30

**14.4.9**   JOP subsidies shall not be unreasonably denied by the District Council. The District Council shall respond to any JOP application within five (5) working days. To obtain the pinpointing subsidy, the EMPLOYER must notify District Council 21 that the EMPLOYER has been awarded the relevant contract within thirty (30) days after the pinpointing subsidy application is approved by District Council 21. An EMPLOYER can request a thirty (30) day extension of time to provide notice of the contract award and said extension will be automatically approved. For good cause shown, an EMPLOYER can request an additional extension of time to provide notice of the contract award. If the EMPLOYER fails to notify District Council 21 that the EMPLOYER has been awarded the relevant contract within the prescribed time, including any approved extensions of time, the relevant pinpointing subsidy will be automatically terminated.

**14.4.10**   If any EMPLOYER is found to have abused the JOP subsidies more than once in any given year, said EMPLOYER will not be eligible for JOP subsidies for a period of up to one year. A third finding of abuse will suspend said EMPLOYER'S use of JOP subsidies for the remaining term of the Agreement.

**14.4.11**   Nothing contained herein shall prevent the Trustees from adopting additional rules and regulations not inconsistent with or in conflict with the foregoing.

## Fund Two

## Pinpointing Fund Glaziers

**14.5**   **Purpose:**
The COUNCIL and A.G.M.A. agree to continue and maintain a jointly managed Pinpointing Fund. Where pinpointing has been approved for a project, the EMPLOYER shall not be required to make contributions for Health & Welfare, Annuity, D.C. 21 Apprentice, National Apprentice, I.U.P.A.T. Pension and the HRA Fund for that project. Apprentice hours shall be pinpointed for Health & Welfare, Annuity, D.C. 21 Apprentice, National Apprentice, and the HRA Fund. The I.U.P.A.T. Pension shall not be pinpointed in the case of Apprentices.

31

14.6    **Amount:**
The EMPLOYER agrees to pay into the Pinpointing Funds in the following amount per hour paid; Effective May 1, 2012, One Dollar and Thirty Five Cents ($1.80) per hour worked.

## ARTICLE 15

### Industry Advancement Funds
### Fund One (Glazier Zones 1thru 5, Painters Zones 2,3,4, Drywall Finisher Zones 1 thru 5, Wallcoverers Zones 2,3,4)

15.1    **Recognition:**
The Industry Advancement Funds (I.A.F.) shall be established for the sole purpose and intent of promoting, advancing and protecting the industry and shall be managed solely by the individual Associations. No part of the Funds or property of the I.A.F. may be used to undermine the COUNCIL, its Collective Bargaining Agreements, and its right to represent EMPLOYEES, to encourage or support litigation against the COUNCIL or to support EMPLOYER negotiations with the COUNCIL for successor Collective Bargaining Agreements.

15.2    **Payments to I.F.C.A. I.A.F.**
**EMPLOYERS covered by the I.F.C.A. – District Council Collective Bargaining Agreement shall make contributions to the I.F.C.A. I.A.F. at the rate of $.20 per hours worked.**

15.3    **Payments to A.G.M.A. I.A.F.**
EMPLOYERS covered by the A.G.M.A. – District Council Collective Bargaining Agreement shall make contributions to the A.G.M.A. I.A.F. at the rate of $.30 per hours worked.

15.3.1    **A.G.M.A. Representation: (For Glaziers ONLY)**
EMPLOYEES covered herein shall not be permitted to work for an EMPLOYER unless such EMPLOYER shall first agree to be bound by the provisions of a Collective Bargaining Agreement with District Council 21. EMPLOYERS that agree to be bound by A.G.M.A. – District Council 21 Collective Bargaining Agreement shall be deemed to have authorized A.G.M.A. to represent such EMPLOYER as its collective bargaining representative in contract negotiations and for all matters relating to such Agreement.

## Article 27

## <u>Duration</u>

27.1    **Term:**
This Agreement will continue for a term of five (5) years from May 1, 2017 thru April 30, 2022, between District Council 21 and the A.M.P.D, all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

27.2    **Term:**
This Agreement will continue for a term of three (3) years from May 1, 2015 thru April 30, 2018, between District Council 21 and the I.F.C.A., all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

27.3    **Term:**
This Agreement will continue for a term of three (3) years from May 1, 2015 thru April 30, 2018, between District Council 21 and the A.G.M.A, all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

27.4    **Term:**
This Agreement will continue for a term of three (3) years from May 1, 2015 thru April 30, 2018, between District Council 21 and the P.D.C.A.-HARRISBURG, PA, all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

27.5    **Term:**
This Agreement will continue for a term of three (3) years from May 1, 2015 thru April 30, 2018, between District Council 21 and the P.D.C.A. of Northeast PA, all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

27.5    **Term:**
This Agreement will continue for a term of three (3) years from May 1, 2015 thru April 30, 2018, between District Council 21 and the Keystone Contractors Association, all Independent EMPLOYERS and any other Association this Union may recognize as provided herein.

108

27.7   **Duration & Evergreen Clause:**
All the above mentioned Agreements shall continue thereafter from year to year unless terminated by either side giving to the other written notice between sixty and ninety days prior to the expiration of the then current term of their desire to modify or terminate.

109

**GLAZIERS**
**May 1, 2015 to April 30, 2018**

### Signature Page

In Witness whereof, the parties hereto, intending to be legally bound, have hereunto set their hands and seals the day and year and for and period extended by Article 27.5

From: ___1/14/2016___   To: ___4/30/2018___

I/We, the undersigned, an EMPLOYER in the Painting, Paperhanging, Drywall, and Glazing Industries, have read the foregoing Agreement, am familiar with its provisions, accept and agree to be bound by all its terms and conditions. I also agree, with the signing of this Agreement, to provide to District Council No. 21 a complete list of all my journeypersons and apprentices whom I employ.

### Independent Employer or Association

**District Council # 21**
**International Union of Painters and Allied Trades**

BY _/s/_ _____
     Joseph T. Ashdale
**Business Manager/Secretary Treasurer**

MARRERO GLASS & METAL, INCORPORATED
                    Company

BY _/s/_ _____
**Employer Representative or Independent Employer Association**

# Exhibit

# B

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** is entered into by two groups: Employer-Related Parties and Union/Benefit Fund-Related Parties. The Employer-Related Parties are comprised of Marrero Glass & Metal, Inc. ("MGM"), Metro Glass & Metal, Inc. ("Metro"), and Jaime Marrero ("Mr. Marrero")). The Union/Benefit Fund-Related Parties are comprised of benefit funds affiliated with International Union of Painters and Allied Trades ("IUPAT") District Council No. 21 ("DC 21") (specifically, the IUPAT DC 21 Health and Welfare Fund, IUPAT DC 21 Annuity Fund, IUPAT DC 21 Vacation Fund, IUPAT DC 21 Finishing Trades Institute of the Mid-Atlantic Region, Painters District Council No. 21 Scholarship Fund, Painters District Council No. 21 Job Organization Program Trust Fund – which shall be collectively referred to as the "DC 21 Benefit Funds"), certain benefit funds affiliated with the IUPAT international union (specifically, the Labor Management Cooperative Fund and IUPAT Finishing Trades Institute – referred to herein as the "International Funds), Joseph Ashdale in his capacity as a trustee of the DC 21 Benefit Funds ("Trustee Ashdale"), IUPAT DC 21 (the "Union"), and the IUPAT (the "International Union"); and

WHEREAS, the Employer-Related Parties have filed suit in the United States District Court for the Eastern District of Pennsylvania in Civil Action No. 17-cv-00255 against the Union/Benefit Fund-Related Parties alleging tortious interference with contractual relations, civil conspiracy, and abuse of process and seeking declaratory judgment under Section 301 of the Labor Management Relations Act ("LMRA") and Section 502 of the Employee Retirement Income Security Act ("ERISA"); and

WHEREAS, the DC 21 Benefit Funds, the International Funds, the Union, and Trustee Ashdale have filed suit in the United States District Court for the Eastern District of Pennsylvania in Civil Action No. 17-cv-00257 against the Employer-Related Parties alleging violations of ERISA and the LMRA by a significant delinquency in MGM's obligation to make contributions

1

to the various benefit funds, as required by its collective bargaining agreement; the failure/refusal of MGM or Metro to submit to audits of their books and records, as called for by the collective bargaining agreement; and personal financial responsibility for delinquent contributions on the part of Mr. Marrero; and

WHEREAS, the parties wish to resolve EDPA Civil Actions 17-cv-00255 and 17-cv-00257 without further litigation by entering into this Settlement Agreement; and

WHEREAS, the DC 21 Benefit Funds and the International Funds seek to collect upon the obligations owed in accordance with federal law, in particular in accordance with Department of Labor Prohibited Transaction Exemption 76-1; and

WHEREAS, MGM wishes to become compliant with all terms and conditions of its current collective bargaining agreement and regain its status as a contractor in good standing with the Union; and

NOW, THEREFORE, intending to be legally bound, the undersigned Parties hereby agree as follows:

1.      The foregoing recitations are incorporated herein and made a part of this Settlement Agreement.

2.      This Agreement constitutes the compromise and settlement of highly disputed claims. Nothing contained herein, nor any actions taken by any parties in connection herewith, shall constitute, be construed as, or be deemed to be, an admission of fault, liability, or wrongdoing of any kind whatsoever on the part of any party hereto. The Parties, individually and in the aggregate, expressly deny any fault, liability or wrongdoing, and intend merely to avoid further litigation.

3.      MGM will pay a principal amount of $77,000.00 over two years, with annual interest at 5% to be included with each equal installment payment. The first payment of $3,378.10 is due on or before January 30th, 2018, and the twenty-three (23) consecutive monthly payments

of the same amount will be due on or before the 30th of each month thereafter until the settlement amount is paid in full. For any and all payment installments that become due and owing in the month of February, the payment installment will be due on the 28th day as a result of it being a shortened month. Each consecutive monthly payment shall be made payable to "IUPAT DC 21 Benefit Funds" and sent directly to Brian Smith, Delinquency Controller, at 2980 Southampton Road, Philadelphia, PA 19154.

4.     MGM and DC 21 acknowledge that each party has a continuing obligation to comply with all terms of the collective bargaining agreement, all trust documents of the DC 21 Benefit Funds and International Funds, and all laws applicable thereto.

5.     In addition to the payments called for by Paragraph 3 of this Settlement Agreement, MGM must make all contribution payments going forward in strict compliance with the collective bargaining agreement, all trust documents of the DC 21 Benefit Funds and International Funds, and all laws applicable thereto.

6.     Upon clearance of the first payment called for by Paragraph 3 of this Settlement Agreement, and so long as MGM remains fully compliant with all terms of this Settlement Agreement, the collective bargaining agreement, and the DC 21 Benefit Funds and International Funds' trust documents, the Union shall term MGM an employer "in good standing" and supply labor for future projects and will provide contemporaneous confirmation of good standing.

7.     The Union/Benefit Fund-Related Parties shall not seek an audit of Metro Glass and Metal.

8.     EDPA Civil Actions 17-cv-00255 and 17-cv-00257 shall be dismissed as Settled, Discontinued and Ended with Prejudice as against all Parties.

9.     If MGM defaults on any of the terms of this Settlement Agreement and does not cure the default within the cure period explained below, the DC 21 Benefit Funds may take whatever action they consider reasonably appropriate to collect all amounts owed by the Employer.

3

In the event of default, the DC 21 Benefit Funds may recover the full amount then owed, plus interest of one percent (1%) per month on the outstanding balance. In addition, the DC 21 Benefit Funds can recover all attorneys' fees and costs and related collection costs it incurs as a result of default of this Settlement Agreement. A default will occur in the event:

(a)     MGM fails to timely remit any required payment under the terms of this Settlement Agreement, the collective bargaining agreement, and the DC 21 Benefit Funds and International Funds' trust documents; or

(b)     Any check provided by MGM is dishonored by the bank when presented for payment;

(c)     MGM submits an untimely remittance report or contribution payment during the repayment term of this Settlement Agreement; or

(d)     MGM makes a general assignment for the benefit of creditors, becomes subject (voluntarily or involuntarily) to any state bankruptcy or insolvency proceeding or becomes a debtor in a proceeding under Title 11, U.S.C., or make or file an arrangement with creditors in order to take advantage of any insolvency law.

10.     In the event of default, the DC 21 Benefit Funds will provide **written notice** to MGM as specified below. MGM will then have a **ten (10) day period** within which it may cure the default.

11.     Upon any default not timely cured, the DC 21 Benefit Funds shall have the right, but not the obligation, to use any one or more remedies as set forth herein, or any other remedy provided under applicable law, in their absolute and sole discretion, provided additionally as follows:

(a)     Acceptance by the DC 21 Benefit Funds of one or more late or partial payments shall not constitute a waiver of the DC 21 Benefit Funds' right to demand that payment

4

be on time and in full for all subsequent payments. Failure or delay by the DC 21 Benefit Funds to enforce this Agreement shall not constitute a waiver of the right to collect all sums due under this Settlement Agreement, any collective bargaining agreement, or Section 502(g)(2) of ERISA.

      (b)    An affidavit executed by counsel for the DC 21 Benefit Funds, or by any other authorized representative(s) of the DC 21 Benefit Funds, shall constitute conclusive proof of a claim for the amount of any sums due to the DC 21 Benefit Funds as delinquent contributions, interest, liquidated damages, late charges, administrative costs, attorney's fees and costs, or other amounts due and owing in the event that judicial enforcement of this Settlement Agreement become necessary.

      12.    The obligation of the DC 21 Benefit Funds to provide MGM with written notice of default and right to cure may be satisfied by mailing the notice by first class mail with a courtesy email to:

> Marrero Glass and Metal, Inc.
> Attn: A. Jordan Rushie, Esq.
> 1010 N. Hancock Street
> Philadelphia, PA 19123
> Email: jrushie@rushielaw.com

    Notices to the DC 21 Benefit Funds shall be mailed by first class mail with a courtesy email to:

> Martin W. Milz, Esq.
> Spear Wilderman, P.C.
> 230 S. Broad Street, Suite 1400
> Philadelphia, PA 19102
> Email: mmilz@spearwilderman.com

Notices shall be considered delivered when received by the party or its counsel. Absent a delivery receipt or affidavit, first-class U.S. Postal System delivery shall conclusively be considered received on the third (3rd) mail day after deposit, overnight delivery on the second (2nd) business day after deposit.

      13.    In the event any check in payment of any obligation under this Settlement

Agreement is dishonored by MGM's bank, the Employer will pay a fee of Fifty Dollars ($50.00) upon demand of the DC 21 Benefit Funds.

14.     This Settlement Agreement is intended to satisfy the conditions set forth in Prohibited Transaction Class Exemption 76-1, 41 F.R. 12740.

15.     Except as required for the implementation of this Agreement, the Employer-Related Parties and the Union/Benefit Fund-Related Parties, their respective employees, agents, successors and assigns, shall treat this Settlement Agreement as confidential and shall not directly or indirectly disclose, disseminate, use, or publish either the terms of this Agreement or the facts or circumstances which relate to the underlying disputes in this case.

16.     Each Party, individually and in the aggregate, agrees not to defame or disparage the other Parties. All Parties will refrain from making negative statements about any other Parties, individually or in their entirety, via any medium, including all electronic communications. The Parties acknowledge that documentation regarding the Dispute, including but not limited to the Complaints and Memoranda, have already been posted on the internet by various entities, including but not limited to the United States District Court for the Eastern District of Pennsylvania, and other websites, without the knowledge or consent of the Parties, however, the Parties agree that they will not further disseminate or publish this posted information.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**IN WITNESS WHEREOF**, and intending to be legally bound hereby, the undersigned have

6

caused this Settlement Agreement to be executed by its proper officers, partners, agents, individuals or employees, as the case may be who the Employer acknowledges, whom are duly authorized to execute this document.

**ON BEHALF OF MARRERO GLASS AND METAL, INC.**

By: _____     Date: 1/30/2018

**ON BEHALF OF METRO GLASS AND METAL, INC**

By: _____     Date: 1/30/2018

**JAIME MARRERO, INDIVIDUALLY**

By: _____     Date: 1/30/2018

**ON BEHALF OF IUPAT DISTRICT COUNCIL NO. 21 FUNDS**

By: _____     Date: 1-26-18
Michael Previtera, Administrator

**ON BEHALF OF IUPAT DISTRICT COUNCIL NO. 21**

By: _____     Date: 1-26-18
Joseph Ashdale, Business Manager

**JOSEPH ASHDALE, IN HIS CAPACITY OF TRUSTEE**

7

By: _____     Date: _1-26-18_____

**ON BEHALF OF IUPAT BENEFIT FUNDS**

By: _____     Date: _1/29/18_____

**ON BEHALF OF INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES**

By: _____     Date: _1/29/2018_____

8

# Exhibit

# C

LAW OFFICES

# SPEAR WILDERMAN

*A Professional Corporation*

230 SOUTH BROAD STREET, SUITE 1400, PHILADELPHIA, PA 19102

TEL.: (215) 732-0101   FAX: (215) 732-7790



June 5, 2018

WARREN J. BORISH*
SAMUEL L. SPEAR
JAMES F. RUNCKEL
CHARLES T. JOYCE*
BENJAMIN EISNER◊
WENDY CHERICI*
JAMES KATZ*
MARTIN W. MILZ*
LOIS GARBER SCHWARTZ*
NICHOLAS J. BOTTA*
SYRETTA J. MARTIN*
MELISSA A. LOVETT
F. TIGHE BURNS*
THEODORE P. DiMUZIO
CHRISTOPHER R. STOCKTON*
SARAH LEAH TARLOW†
CHRISTOPHER G. CASSIE*

PA BAR EXCEPT:
* PA & NJ BAR
◊ PA, NJ & DC BAR
† PA, NY & IL BAR

NJ OFFICE:
1040 N. KINGS HIGHWAY
SUITE 202
CHERRY HILL, NJ 08034
(856) 482-8799 FAX: (856) 482-0343

BRUCE E. ENDY
RETIRED, 2017

LEONARD SPEAR
1923 - 2003

LOUIS H. WILDERMAN
1909 - 1993

*<u>Via First Class and Certified Mail</u>*

Marrero Glass and Metal, Inc.
Attn: A. Jordan Rushie, Esq.
1010 N. Hancock Street
Philadelphia, PA 19123

### RE:   DEFAULT NOTICE

Dear Mr. Rushie:

As you are aware, this office represents the International Union of Painters and Allied Trades ("IUPAT"), IUPAT District Council No. 21 ("DC 21"), IUPAT DC 21 Health and Welfare Fund, IUPAT DC 21 Annuity Fund, IUPAT DC 21 Vacation Fund, IUPAT DC 21 Finishing Trades Institute of the Mid-Atlantic Region, Painters District Council No. 21 Scholarship Fund, Painters District Council No. 21 Job Organization Program Trust Fund, Labor Management Cooperative Fund, IUPAT Finishing Trades Institute, and Joseph Ashdale, as a trustee of the DC 21 Benefit Funds. Please accept this correspondence as formal notice of default pursuant to Paragraph 9 of the Settlement Agreement executed January 30, 2018 between my clients and Marrero Glass and Metal, Inc. A copy of that Agreement is enclosed for your review. Specifically, I direct your attention to the following terms:

. . . A default will occur in the event:

(a)     MGM fails to timely remit any required payment under the terms of this Settlement Agreement and Judgment Note, the collective bargaining agreement, and the DC 21 Benefit Funds and International Funds' trust documents; or . . .

(c)     MGM submits an untimely remittance report or contribution payment during the repayment term of this Settlement Agreement and Judgment Note; . . .

Settlement Agreement, ¶ 9(a),(c). In addition to the foregoing terms requiring timely payment and

Marrero Glass and Metal, Inc.
Attn: A. Jordan Rushie, Esq.
June 5, 2018
Page 2

submission of contribution reports, please review Paragraph 15 and 16 of the Agreement which call for confidentiality and non-disparagement:

> 15.     Except as required for the implementation of this Agreement, the Employer-Related Parties and the Union/Benefit Fund-Related Parties, their respective employees, agents, successors and assigns, shall treat this Settlement Agreement as confidential and shall not directly or indirectly disclose, disseminate, use, or publish either the terms of this Agreement or the facts or circumstances which relate to the underlying disputes in this case.

> 16.     Each Party, individually and in the aggregate, agrees not to defame or disparage the other Parties. All Parties will refrain from making negative statements about any other Parties, individually or in their entirety, via any medium, including all electronic communications. The Parties acknowledge that documentation regarding the Dispute, including but not limited to the Complaints and Memoranda, have already been posted on the internet by various entities, including but not limited to the United States District Court for the Eastern District of Pennsylvania, and other websites, without the knowledge or consent of the Parties, however, the Parties agree that they will not further disseminate or publish this posted information.

Marrero Glass and Metal is in violation of each of these provisions. To wit, Marrero Glass and Metal, though it appropriately paid its most recent installment payment called for by the Settlement Agreement and appropriately reported its hours worked for the months of April and May 2018, it failed to make timely payment upon April's hours. Specifically, $122,408.16 was due and owing as of May 31, 2018. This failure to remit timely payment pursuant to the collective bargaining agreement constitutes violations of Paragraphs 9(a) and (c) of the Settlement Agreement.

Further, in separate violation of the Settlement Agreement, on Tuesday, May 29, 2018, counsel for Marrero Glass and Metal circulated among counsel for unrelated parties a complaint, alleged to have been filed in the Philadelphia Court of Common Pleas, in which it was stated, at Count IV, Paragraph 4, that "The Hall has been sued before for its animosity and discrimination against MGM, which is a family owned and minority operated company." This statement is in plain violation of Paragraphs 15 and 16 of the Settlement Agreement and constitutes independent grounds for default. In further disregard of Paragraphs 15 and 16, counsel for Marrero has shared the Settlement Agreement with counsel unrelated to the settling parties and attached it to court filings in an action in Maryland, wherein it accused the settling parties of an "underhanded maneuver" and also made deliberate misrepresentations about the Settlement Agreement in direct opposition to Judge Brody's very specific May 4, 2018 ruling that the International Painters and Allied Trades Industry Pension Fund was not party to the Settlement Agreement. *See* DMd Case 1:18-cv-00452-ELH, Document 12-1; and EDPA Case 2:17-cv-02755-AB, Document 45.[1]

---

[1]  In her "Order and Explanation" in EDPA Case 2:17-cv-02755-AB, Judge Brody stated in no uncertain terms "The Pension Fund was neither a party to the January 30, 2018 Stipulation of Dismissal nor to the Settlement Agreement" and further noted "The Pension Fund was not a party to the January 30, 2018 Stipulation of dismissal because, six months prior, it had been

Marrero Glass and Metal, Inc.
Attn: A. Jordan Rushie, Esq.
June 5, 2018
Page 3

Pursuant to Paragraph 10 of the Settlement Agreement, Marrero Glass and Metal has ten (10) days within which to cure these defaults. Should it fail to do so, Paragraph 9 of the Settlement Agreement specifically empowers that "the DC 21 Benefit Funds may take whatever action they consider reasonably appropriate to collect all amounts. . . plus interest of one percent (1%) per month on the outstanding balance. In addition, the DC 21 Benefit Funds can recover all attorneys' fees and costs and related collection costs it incurs as a result of default of this Settlement Agreement." Finally, Paragraph 11 states that my clients "shall have the right, but not the obligation, to use any one or more remedies as set forth herein, or any other remedy provided under applicable law, in their absolute and sole discretion." Please be guided accordingly.

                                        Sincerely,
                                        **SPEAR WILDERMAN, P.C.**


                                        Martin W. Milz

Encl.

CC:    Joseph Ashdale
       Michael Previtera
       Brian Smith
       A. Jordan Rushie (jrushie@rushielaw.com)

---

dismissed from Civil Action No. 17-2755, and it was never a party in Civil Action No. 17-2757". Consequently, one cannot truthfully argue that this discussion of the settlement agreement in Maryland (filed June 1, 2018) was "necessary for implementation" of the agreement itself. Nor did Judge Brody's clear ruling dissuade counsel from asserting in the Maryland action that "this matter [referring to the Pension Fund's claim] has already been resolved in the United States District Court for the Eastern District of Pennsylvania."